David Campbell, Special J.,
delivered the opinion of the Court.
The object of the hill is to rescind two contracts, under which complainants became the purchasers of the shares of defendants, La Boitreaux and O. H. Hollister, in a forge and furnace, with the property attached, situated in Stewart County, Tennessee. These purchases were made on the 23d of February, 1853, and the interest required of La Boitreaux was one-fourth the entire property, at the price of $15,000, and of O. H. Hollister one-eighth, at the price of $7,500, which sums have been paid by complainants. The forge, furnace, &c., were originally acquired by the defendant, Henry H. Hollister, by purchase, in 1850, of one Jones, and a copartnership was formed and carried on between him and others, for the manufacture of iron, under the style of H. H. Hollister & Co. Subsequent thereto, the defendant, La Boitreaux, was admitted as a partner, when the firm name became Hollister, La Boitreaux, & Co. The members of the firm at the time, being O. H. Hollister, who owned the share of one-eighth; La Boitreaux, one-fourth; Horace Hollister, one-sixteenth, and Henry H. Hollister, nine-sixteenths. After this, and on the 4th of February, 1853, H. Hollister sold Wm. Ellis one-fourth of his interest, at the price of $15,000, and complainant made the purchase of La Boitreaux and O. H. Hollister, as herein before stated, when the firm name became, again, H. H. Hollister & Co.; the members of the co-partnership being the com *271 plainants, who owned a share of six-sixeenths; Wm. Ellis, four-sixteenths; Horace Hollister, one sixteenth, and Henry H. Hollister, five-sixteenths. Both O. H. Hollister and La Boitreaux, had, during certain periods of the partnership, kept the hooks of the firm; and Henry H. Hollister had resided at the iron works from the beginning, and had superintended their management. Thomas Phillips, who came to Tennessee and made the purchase, lived in Cincinnati. Richard Jar-don, the other complainant, lived in Covington, Ky. They had no previous knowledge of the affairs of the firm, and had to rely on the co-partnership hooks, and statements of defendants. Phillips was never in Tennessee before, and Jardon never at all.
The Chancellor refused all relief, and dismissed the hill. It is difficult to maintain the decree. The hill charges a gross fraud upon La Boitreaux and 0. H. Hollister, of whom complainants purchased, and they fail to make any answer — although they not only had notice by the usual publication, having become non-residents, but had actual knowledge of the pendency of the suit, having given their depositions in the cause. The grounds of relief being distinctly stated, and the case standing upon an order pro confesso, the bill, as to La Boitreaux and O. H. Hollister, must be taken as true by the Court, and np proof in its support is necessary. It has, to be sure, been held, that if a bill filed against two, jointly interested, as two partners, be taken for confessed as to one, and the other partly answers and disproves the plaintiff’s case, it will be dismissed as to both defendants: 2 Hum., 102, 105. But this doc *272 trine hass we believe, never been applied to the case of an answer by a defendant who had distinct rights, and no joint or common interest with the party who fails to answer: 10 Johns, Rep. 537 — 1 Dev. vs. Batt., Eq. Rep., 321. Now, here, the defendant, O. H. Hollister, who answers, was no party to the contract against which relief is sought. La Boitreaux and O. H. Hollister each had a share' in the iron works, which they sold complainants; but in these shares, H. H. Hollister, who owned a distinct share, had no interest. We do not suppose the mere consequential interest which H. H. Hollister acquired in complainants, as future partners, instead of La Boitreaux and O. H. Holister, enables him to make defense for them. Their case may 'be very distinct from his, and may admit of separate relief. Indeed, if his conduct in reference to these contracts was such as not. to prejudice complainants, relieving himself of' all blame, he could not be affected by the injury inflicted upon them by La Boitreaux and 0. H. Hollister. In this view of the case, if complainants, whether ignorant of the wrong done them or not, after being admitted into this partnership, chose to carry it on with H. H. Hollister, they would be held as valid partners, not only as to creditors of the partnership, but as to H. H. Hollister; but we do not think H. H. Hollister has disproved the complainants’ equity. We do not understand him, in his answer, upon any personal knowledge of his own, to undertake a denial of the fraud on the part of La Boitreaux and 0. H. Hollister. His chief concern, is an attempt to exculpate himself. And if we look into *273 the pleadings and proof, we cannot resist the conclusion that complainants should have relief of some sort. The wrong to the complainants, putting the case upon the allegations of the bill, consists in selling them shares in these iron worts, at a very full consideration, and creating in their minds the belief that they were being let into a successful and prosperous partnership, comparatively free of debt, (the iron on hand being sufficient to pay the debts,) and which had made a large profit. The partnership boots and a balance sheet were exhibited to them, showing the profit and the debts actually due by the firm. The sum coming to each partner, as a profit, being stated on the boots, and the interest of La Boitreaux and O. H. Hollister in the ■ profit, was not only in-included in the purchase, but complainants agreed to absolve the said La Boitreaux and 0. H. Hollister from the outstanding debts of the previous firms of H. H. Hollister & Co., and Hollister, La Boitreaux & Co. — tating their places as to said debts, supposing the books and balance sheet to contain a true statement of them; ■ but the truth' turns out to be that the affairs of the partnership had not been successful or prosperous;' that it was nearly, or quite, insolvent; had made no profit, and the partners were entitled to none; and that the outstanding debts of these firms were not truly represented in the balance sheet and upon the books, by many thousands of dollars; and the iron on hand was wholly insufficient to pay them. The bill charges, that H. H. Hollister, 0. H. Hollister, Horace Hollister and La -Boitreaux, knowing *274 the unsafe condition of the firm, conspired to sell their shares at extravagant prices, and rid themselves of the business; that, for this purpose, about the 25th of January, 1853, they fixed up the boohs down to the first of that month, so as to show the firm was out of debt, with profits, etc., and each partner took a balance sheet and set out to sell shares; they represented the property as very fine and valuable, and that they had made great profits and were out of debt. The books and balance sheet were shown and exhibited to complainants before they bought. This was done by La Boitreaux and the Hollisters, and the truth of the boobs and balance sheet believed by complainants. The actual profit placed to the credit of each partner was as follows:
H. H. Hollister... $6,168 77
Horace Hollister_ 685 42
La Boitreaux.. 2,741 68
O. H. Hollister_ 1,370 84
The balance sheet and books, instead of being correct, were false, fictitious, and grossly fraudulent, and did not show the truth as to the outstanding debts, by some twenty or thirty thousand dollars; and among the omitted debts, is a very large one claimed by H. H. Hollister, and which he insists upon having allowed, disregarding the balance sheet and books as made out and shown to complainants. The bill is also taken as confessed as to Horace Hollister.
In his answer to H. H. Hollister, he admits that he had the management of the works; that he had clerks — first, O. H. Hollister; second, one Johnson, and, *275 surely. La Boitreaux; then thought the hooks truly kept, but has since discovered that many errors were committed, principally in omissions to make returns, of which he was not then cognizant; denies that he exhibited the books or abstracts to the complainants, or knew of its being done, or was a party to the representations made to them; but admits he assented to receive complainants as partners. He then believed the entries on the books complete and full. The errors were not to be put to his fault, but to the'book-keeper’s. He waB as much surprised as any one when these errors were discovered; admits that some of the debts of the old firms of H. H. Hollister & Co., and Hollister, La Boitreaux & Co., were not entered on the books of the firms, but they were not so large as alleged — probably from $5,000 to $6,000, in addition to the omission as to the debts due himself, which he claims to have corrected; admits that he (O. H. Hollister) and La Boi-treaux made out the balance sheet, and made the entries on the books, of the result and profits, which they then thought to be correct; that they put down all the debts they could remember; but it turned out that many debts were omitted, which made the books erroneous.
La Boitreaux is examined for the defendant, H. H. Hollister, and states that the books and balance sheet, were not fixed up to sell shares by, but as data by which to settle in the future; that the debts were given to him, when he fixed up the books, by H. H. and O. H. Hollister; that he then thought them correct, and yet so thinks; that the books and balance *276 sheet were examined by the complainants, before they purchased ; were shown to them by him, and from them the complainants got the debts of the firm.
The conviction forced upon us, from reading this record, is, that when complainants purchased, they were induced to believe that the hooks contained a true statement ’ of the indebtedness of the antecedent firms of H. H. Hollister & Co., and Hollister, La Boitreaux & Co., not only by the representations of La Boitreaux, but ■of the Hollisters, including H. H. Hollister. The books are not filed as evidence; but Greorge P. Wilcox, who appears to understand them, is examined in relation to them; and from his proof, it appears that the sum of ■$14,209.52, of indebtedness by these firms, created' prior to the taking of the balance sheet, hut not mentioned in that, or on the books of the firm of which •complaints became members, in the years 1853 and 1854; and what amount of such debts have been subsequently paid, or remain unpaid, had been paid out ■by the firm, the witness could not state. Furthermore, ■according to the books, the firm, on the 1st day of •January, 1853, owed H. H. Hollister, $5,565.53; but if ■corrected, as he now demands, the boobs should have shown an indebtedness to him, at that time, of $20,565.53. It is difficult to believe, that such a wide departure from the truth, was the result of ignorance, and not of design, on the part of these defendants, most of whom, and especially H. H. Hollister, had been conversant with the affairs of these firms, from their origin. However this may he, the law is settled, that whether a party misrepresenting a fact, know it to be false, *277 or made an assertion without knowing it to he true or false, is wholly immaterial. It has been correctly said to affirm what one does not know or believe, is unjustifiable, either in law or morals. And, indeed, it seems now to be well settled, that if a party innocently misrepresents a material fact by mistake, upon which another party is induced to act, it is as conclusive a ground for relief in equity, as a willful and false assertion; for it operates as a surprise and imposition on the other party. In such a case, the party must, be held to his representations: Lewis et al. vs. McLemore et al., 10 Ter., 206-209; 1 Story’s Eq., sec. 193; Merriwether et al vs. Lorman et al., 3 Sneed, 448-452; Davidson vs. Weekly, 3 Yer., 196, and H. H. Hollister -. As between him and complainants, whether he had a greater interest in having them, instead of La Boitreaux and O. H. Hollister, as partners or not, (and we think it likely he had,) cannot be allowed to insist upon other debts, than those shown by the books of the two old firms of H. H. Hollister & Co., and Hollister, La Boi-treaux & Co.
It does not appear to us, that complainants have come too late, or done anything, to waive their equity to relief. The bill, it is true, was not filed until the 26th of November, 1856; but it is alleged in the bill, that they were in utter ignorance of the fraud perpetrated upon them, or the injury done them, until a short time before the bill was filed. As to this matter, the answer of H. H. Hollister admits that Jardon was never at the works, and Phillips only once or twice, and then only for a short time, and could not have *278 had much knowledge of the business. They were the merchants at Cincinnati to sell the iron, etc. It is shown', that, on the 15th of November, 1854, Ellis had filed his bill for a dissolution and settlement of the-partnership; and in taking the account in that case, it was discovered that both he and complainants had been defrauded, he having, also, in his purchase, agreed to pay one-fourth of the debts of the prior firms. They then filed their bill, and Ellis his amended bill, (on the 27th of March, 1857,) praying for a recision of the contract, and, by agreement between him and H. H. Hollister, the contract was subsequently rescinded.
But we do not think this a proper case to rescind the purchases of complainants; the parties cannot be put in statu quo. In the case of Ellis, a decree was made to sell the partnership property, to close the partnership; and at the Commissioner’s sale, under the decree, on the 22d of January, 1855, the complainants, (being still ignorant of the wrong done them,) purchased the furnace and other property, to the value of $20,315.67; H. H. Hollister, the forge and some other property; and Ellis also purchased a part of the property. These parties have, respectively, been in the possession and use of the property so purchased, ever since the said Geo. P. Wilcox having acquired an interest of one-third in the furnace, after the Commissioner’s sale by purchase from the complainants, and he and they have used and worked the furnace ever since, under the firm of Geo. P. Wilcox and Co., and Wilcox is no party to this suit. In this state of facts, we do not see how we can annul the purchases of complain *279 ants. The conditions of the late firm of H. H. Hollis-ter & Co., could not be affected by the informality of the contracts between complainants and La Boitreaux and O. H. Hollister. We can only hold, that, as between complainants and defendants, the books of the prior firms of H. H. Hollister & Co, and Hollister, La Boitreaux & Co., as they existed at the time of complainants’ purchases, on the 23d of February, 1853, shall be held to state the true indebtedness of these firms; and so far as complainants have paid other debts of said firms; he same shall be refunded, by decree, against La Boitreaux and the Hollisters, and a lien on any partnership property held by them, or any of them; and if any other such debts, not so stated on the books, remain unpaid, the complainants will not be liable therefor; and upon this principle, the late partnership of H. H. Hollister and Co., will be settled, holding complainants as members thereof — but holding defendants, La Boitreaux and the Hollisters, as bound to make good their statements, as to the indebtness of the prior firms.
As to the iron on hand when complainants, purchased, they were very capable of judging of its value, and we must suppose they did; and if it were insufficient to pay the indebtedness of these firms, as represented on the firm books, they could readily see it; and to believe they did not, would be to suppose them wanting in common care and prudence. For any deficiency in this respect, then, complainants must abide the case made by themselves. But, as to the debts not stated *280 on the books of the firms, they stand on very different ground.
Decree reversed.
Such is the opinion of His Honor, Judge Wright, in this cause, prepared after its argument at a former term of the Court. An examination of the authorities and the record, has satisfied this Court of the correctness of the conclusions of law and fact, to which His Honor comes in the foregoing opinion, which is adopted as the opinion of this Court. •
The decree of the Chancery Court will be reversed— a decree entered here in accordance with his opinion; and the cause remanded for the execution of the decree, and further proceedings in the Chancery Court.